IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JENNIFER MENDOZA, INDIVIDUALLY, AND AS NEXT FRIEND OF A.M., §<br>§<br>§<br>Plaintiffs, §<br>§<br>v. §<br>§<br>KLEIN INDEPENDENT SCHOOL DISTRICT, W. SCOTT CROWE and STEPHANIE LANGNER IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, §<br>§<br>§<br>§<br>§<br>§<br>Defendants. § | Civil Action No. H-09-3895 |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Plaintiff's Motion for Summary Judgment (Docket Entry No. 19) and Defendants' Motion for Summary Judgment (Docket Entry No. 21). For the reasons discussed below, it is **RECOMMENDED** that Plaintiffs' motion be **DENIED** and that Defendants' motion be **GRANTED IN PART, DENIED IN PART**.

### I. Statement of the Case

#### A. Factual Background

Plaintiff Mendoza and her daughter, A.M., initiated this action against Klein Independent School District ("Klein ISD"), Principal W. Scott Crowe ("Crowe") and Associate Principal Stephanie Langner ("Langner") under 42 U.S.C. § 1983 ("Section 1983"), alleging that Defendants Crowe and Langner violated A.M.'s

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 24.

Fourth and Fourteenth Amendment rights to be free from an unreasonable search and seizure.  Plaintiffs also bring state law claims against the individual defendants.

Klein Independent School District ("Klein ISD") has a policy that states:

> If a student is using any cell phone or pager during the school day, or on a school bus to and from school, the school employee observing the student's use of the device will confiscate it. The school employee is to turn over the device to his or her administrator/supervisor.  The parent will be notified by the administrator to pick up the device at his/her school during school hours after the payment of a $15 administration fee.[2]

On November 11, 2009, between second and third periods at Krimmel Middle School, Plaintiff A.M., an eighth-grade student, was observed by Langner showing a group of seven to ten students something in her hand.[3]  Believing that the students were looking at a cell phone, Langner approached the group of students.[4]  A.M. observed Langner, turned the phone off and placed it in her pocket.[5]  Langner demanded that the phone be turned over to her.[6]

Langner testified that A.M. became upset and protested Langner's taking her phone.[7]  According to Langner, A.M. stated

---

[2]    Defendants' Motion for Summary Judgment, Docket Entry No. 21, ("DMSJ"), Ex. B-3, Policy.

[3]    DMSJ, Ex. C, Deposition of Stephanie Langner, pp. 10-11.

[4]    Id. at pp. 11-12.

[5]    DMSJ, Ex. A, Deposition of A.M., p. 11.

[6]    Id. at p. 13.

[7]    DMSJ, Ex. C, Deposition of Stephanie Langer, pp. 13-14.

that she had not been using the phone and her friends would verify that fact.[8]  A.M. testified that she begged Langner not to take the phone because it was the third time she had had her phone confiscated that year and her mother would make her pay the fee.[9]  When A.M. was asked at her deposition if she recalled telling Langner that she, A.M., had not used the phone, A.M. responded that she did not remember.[10]  A.M. surrendered the phone to Langner and went to her next class.[11]

According to Langner, because A.M. had denied using the phone, Langner turned on the phone to determine if A.M. had used the phone during school hours.[12]  Langner also stated in her affidavit that, based on A.M.'s and the other students' reactions upon seeing Langner, she also suspected that what they had been looking at on the phone was probably inappropriate for a school setting.[13]

Determining there were texts that had been sent during school hours, Langner scrolled to the earliest "sent" text on the menu for that day.[14]  Langner testified that, "[V]ery soon after opening the

---

[8]    Id. at p. 14.  At another point in her deposition, A.M. admitted that she was showing those present a text message that she had received from another friend.  DMSJ, Ex. A, Deposition of A.M., p. 11.

[9]    DMSJ, Ex. A, Deposition of A.M., p. 10.

[10]    Id. at p. 14.

[11]    Id. at p. 15.

[12]    DMSJ, Ex. C, Deposition of Stephanie Langner, p. 19.

[13]    DMSJ, Ex. B, Affidavit of Stephanie Langner, ¶ 6.

[14]    DMSJ, Ex. C, Deposition of Stephanie Langner, pp. 20-21.

sent box, I found a picture of A.M. and she had taken it in front of the mirror and she was nude."[15]

Langner called A.M. into her office to discuss the picture A.M. had sent.[16]  A.M. explained that she had sent the picture to a boy because he had sent similar pictures to her.[17]  Langner asked if A.M. had shown the pictures to any other student, and A.M. admitted she had shown the pictures of the nude male to her friend, B.M.[18]  Langner notified the school principal, Crowe, that she had confiscated A.M.'s phone, that she had found a nude picture of A.M. on the phone and, after discussing this with A.M., had learned that a young man had sent A.M. nude pictures of himself via the phone.[19] Crowe told her to call the Klein ISD police.[20]  Langner did so and also called A.M.'s mother, Plaintiff Mendoza, and asked her to come to the school for a conference.[21]  Langner explained to Plaintiff Mendoza that she had found nude pictures on A.M.'s phone and that she would speak to Mendoza the following day to tell her what the

---

[15]    Id. at p. 22.

[16]    Id. at p. 27.

[17]    Id.   A.M. agreed that when confronted with her picture, she told Langner that she had sent it to her male friend and that she alerted Langner to the nude photos that she had received from the boy. DMSJ, Ex. A, Deposition of A.M., pp. 17-18.

[18]    DMSJ, Ex. B, Affidavit of Stephanie Langner, ¶ 8.

[19]    DMSJ, Ex. C, Deposition of Stephanie Langner, pp. 29-30.

[20]    Id. at p. 30.

[21]    DMSJ, Ex. B, Affidavit of Stephanie Langner, ¶ 10.

consequences would be for A.M.[22]  Langner turned over the phone to Klein ISD Police Officer Mansfield.[23]

The following day, Langner spoke to B.M. and asked her what the group of students was looking at in the hallway the previous day.[24]  B.M. stated that A.M. was showing them a text message from an ex-boyfriend.[25]  Langner asked if A.M. had shown B.M. anything else on her phone; B.M. told Langner that A.M. had shown B.M. and J.B. four pictures of a nude male the previous Monday.[26]  J.B. was called to the office and confirmed to Langner that A.M. had shown J.B. several pictures of a nude male several days earlier.[27]

Langner phoned Plaintiff Mendoza and informed her that A.M. would be assigned to In School Suspension for three days and that further consequences, including expulsion, were pending the results of her investigation and the Klein ISD's investigation.[28]  Several days later, Klein ISD Police Officer Mansfield notified Langner that the Child Exploitation Division of Precinct Four had decided

---

[22]     Id. at ¶ 11.

[23]     Id. at ¶ 12.

[24]     Id. at ¶ 13.

[25]     Id.

[26]     Id.

[27]     Id.  A.M. admitted that she showed the pictures to B.M. but denied showing the pictures to J.B.  See DMSJ, Ex. A, Deposition of A.M., pp. 23-24.

[28]     DMSJ, Ex. B, Affidavit of Stephanie Langner,  ¶ 14.

to destroy the cell phone.[29]

On November 17, 2009, Principal Crowe discussed with Plaintiff Mendoza the findings of the school's investigation of the incident.[30] At that time he informed Mendoza that A.M. had been found to have violated the Klein ISD Student Handbook's prohibition of "incorrigible behavior," specifically for: (1) "Engaging in serious or persistent acts of disobedience or disorderly behavior which may prove detrimental to the school, harmful to health and safety, and inhibiting the rights of others; and (2) "Displaying any behavior which is disruptive toward school personnel or failing to comply with the requests of school personnel."[31] Crowe told Plaintiff Mendoza that A.M. would be assigned to the Klein ISD Disciplinary Alternative Education Program ("DAEP") for a period of thirty school days.[32]

Plaintiff Mendoza appealed this decision to the Klein ISD School Board; the decision was upheld by Klein ISD Associate Superintendent of School Administration Janice Marek ("Marek"), the school board's designee.[33] The school administration later determined, because the semester was ending, that A.M.'s assignment

---

[29] Id. at ¶ 15.

[30] DMSJ, Ex. F, Affidavit of Scott Crowe, ¶ 7.

[31] Id.

[32] Id.

[33] Id. at ¶ 8.

to the DAEP would terminate on December 18, 2009.[34]

A.M. returned to Krimmel Middle School on January 4, 2010.[35] A.M. complains that she was replaced on the basketball team after being promised by the basketball coach that she would have a place on the team when she returned.[36]  A.M. also complains that her reputation was harmed by the search of the phone because her friends, B.M. and J.B., told other students the reason for A.M.'s assignment to the DAEP.[37]

### B.  Procedural Background

On December 4, 2009, Mendoza, individually, and on behalf of A.M., filed the present suit against Klein ISD, Langner and Crowe pursuant to Section 1983.  Plaintiff Mendoza claims that Crowe and Langner violated the constitutional rights of herself and A.M. when Crowe and Langner accessed A.M.'s phone in violation of the Fourth Amendment.[38]  Plaintiff Mendoza also claims that Klein ISD is liable for the acts of Crowe and Langner because it failed to train them on student rights and failed to create policies and procedures to prevent illegal searches and seizures.[39]

---

[34]    Id.  A.M. testified that because she contracted mononucleosis, she only attended the DAEP for several days before staying home the remainder of the semester.  See DMSJ, Ex. A, Deposition of A.M., pp. 25-26.

[35]    DMSJ, Ex. F, Affidavit of Scott Crowe, ¶ 8.

[36]    DMSJ, Ex. A, Deposition of A.M., pp. 26-27.

[37]    Id. at pp. 26-29.

[38]    Plaintiffs' First Amended Complaint, Docket Entry No. 16, p. 5.

[39]    Id. at p. 7.

Plaintiff Mendoza also sues Crowe and Langner for intentional infliction of emotional distress arising out of A.M.'s assignment to the DAEP for "incorrigible behavior" and negligence, claiming that they had a "duty not to violate Plaintiffs' constitutional rights."[40]

Both Plaintiffs and Defendants have moved for summary judgment.  Plaintiffs argue that, as a matter of law, Langner's search of A.M.'s phone was not reasonable because Langner had no reasonable ground to believe that a search of the phone would show that A.M. had violated a school rule.  Plaintiff Mendoza also seeks a ruling that she, as the subscriber of the cell phone service for the seized phone, has standing to assert a claim for unlawful search and seizure of the phone.

Defendants Crowe and Langner assert that they are entitled to qualified immunity because Plaintiffs cannot show a violation of their clearly established constitutional rights.  Crowe and Langner also assert that Plaintiffs' state law claims should be dismissed on three separate grounds:  (1) for failure to exhaust administrative remedies;  (2) because they are entitled to professional immunity under the Texas Education Code; and (3) Plaintiffs' IIED claim is duplicative of Plaintiffs' other claims and is therefore barred.  Defendant Crowe argues that Plaintiffs cannot establish supervisor liability under Section 1983 for the

---

[40]     Id. at p. 8.

actions of Langner.

Defendant Klein ISD argues that it is entitled to summary judgment because Plaintiffs cannot establish that one of its policies was the moving force in the violation of a federally-protected right.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex

9

Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

On cross-motions for summary judgment, the court must review each motion independently, viewing the evidence and the inferences in the light most favorable to the non-moving party.  Tidewater Inc. v. United States, 565 F.3d 299, 302 (5th Cir. 2009).  "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment."  Shaw

Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 539 (5th Cir. 2004).

### III.  Analysis

### A. Langner, Crowe, and Klein ISD's Motion for Summary Judgment

#### 1.  Section 1983 Claim

A plaintiff can establish a prima facie case under Section 1983[41] by alleging 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law.  Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995).  The statute creates no substantive right, but only provides remedies for deprivations of rights created under federal law.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

#### a.  Individual Defendants

Government officials, such as Crowe and Langner, sued in their individual capacities, are protected by qualified immunity from Section 1983 suits for actions performed in the exercise of discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[41]    The provision reads, in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983.

11

reasonable person would have known." Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982); see also Texas v. Walker, 142 F.3d 813, 818
(5th Cir. 1998).   In order to overcome an assertion of qualified
immunity, a plaintiff bears the initial burden of showing that the
official's conduct violated a constitutional or statutory right.
Hope v. Pelzer, 536 U.S. 730, 736 (2002); Saucier v. Katz, 533 U.S.
194, 201 (2001); Williams v. Kaufman County, 352 F.3d 994, 1002 (5th
Cir. 2003).   When considering a summary judgment motion, the
court's qualified immunity analysis ends if the plaintiff produces
no evidence of constitutionally impermissible conduct.   McClendon
v. City of Columbia, 305 F.3d 314, 323, 327 n.9 (5th Cir. 2002); see
also Saucier, 533 U.S. at 201 ("If no constitutional right would
have been violated were the allegations established, there is no
necessity for further inquiries concerning qualified immunity.")
Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003)("If
there is no constitutional violation, our inquiry ends.")

    If, however, the plaintiff satisfies this initial burden, the
court determines whether the right was clearly established at the
time of the violation.  Hope, 536 U.S. at 739; Saucier, 533 U.S. at
201; Williams, 352 F.3d at 1002; Hare v. City of Corinth, Miss.,
135 F.3d 320, 325 (5th Cir. 1998).   A legal right is "clearly
established" if pre-existing law sufficiently defines the right so
that a reasonable public official would understand whether his
actions were constitutional in the situation confronting him.

<u>Hope</u>, 536 U.S. at 739; <u>Williams</u>, 352 F.3d at 1002-03.  Ultimately, if the legal rules are sufficiently clear, then a plaintiff must prove that the government employee's actions were objectively unreasonable within that legal context.  <u>See Saucier</u>, 533 U.S. at 208; <u>McClendon</u>, 305 F.3d at 323; <u>Hare</u>, 135 F.3d at 326.

The court first considers whether Plaintiffs have alleged a violation of a constitutional right.  There is no question that the cell phone in question contained private information, that A.M. had a reasonable expectation of privacy regarding this information, and that any search of the phone was subject to the limitations of the Fourth Amendment.  <u>See United States v. Zavala</u>, 541 F.3d 562, 576 (5th Cir. 2008)(stating that search of cell phone required either separate consent to search or probable cause).  However, in the context of a search of a student in a school setting, a more lenient standard of reasonableness under the Fourth Amendment has developed.

In <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 334-37 (1985), the Supreme Court considered the appropriate balance between a student's constitutional right to be free from an unreasonable search and seizure and school administrators' need to maintain order and enforce rules.  Two high school students were discovered by a teacher smoking in a restroom, a violation of school rules.  <u>Id.</u> at 328.  One admitted smoking; the other, T.L.O., denied ever smoking at any time.  <u>Id.</u>  The assistant principal demanded

13

T.L.O.'s purse, opened it, and immediately discovered a pack of cigarettes. Id. Noticing that cigarette rolling papers were also in the purse, the assistant principal searched it thoroughly and found a small amount of marijuana, a pipe, a number of empty bags, a substantial quantity of money in one-dollar bills, a list of students who owed T.L.O. money and two letters that implicated T.L.O. in marijuana dealing. Id. The assistant principal notified T.L.O.'s mother and turned over the evidence of drug dealing to the police. Id. T.L.O. later confessed that she had been selling marijuana at the high school. Id. at 329.

In a delinquency proceeding, T.L.O. moved to suppress the evidence on the grounds that the search of her purse was unlawful and that her confession was tainted by that unlawful search. Id. The trial court determined that the assistant principal's search of T.L.O.'s purse was justified by a well-founded suspicion that she had violated the rule prohibiting smoking in the restroom. Id. And, once the purse was opened and evidence of T.L.O.'s marijuana dealing was in plain view, the assistant principal was entitled to conduct a thorough search of the purse. Id. at 329-30. The evidence was not suppressed, and T.L.O. was found to be delinquent. Id. at 330.

After the appellate court affirmed the trial court's finding that there had been no Fourth Amendment violation, T.L.O. appealed to the New Jersey Supreme Court. Id. at 330. That court found

14

that a warrantless search by a school official did not violate the Fourth Amendment as long as the official had reasonable grounds to believe that the student possessed evidence of illegal activity or an activity that would interfere with school discipline or order. Id. at 330-31.   The New Jersey Supreme Court reasoned that the accusation that T.L.O. had been smoking in the restroom had no relationship to the contents of her purse because possession of cigarettes was not a violation of school rules, therefore the mere possession of cigarettes would not impeach T.L.O.'s claim that she had not been smoking.   Id. at 331.   That fact, coupled with the fact that the assistant principal had no specific information that T.L.O. had cigarettes in her purse, required the conclusion that there was no justification for the extensive search of T.L.O.'s purse.   Id.   New Jersey appealed.   Id.

The United States Supreme Court agreed with the New Jersey Supreme Court that the Fourth Amendment was applicable to searches conducted by school officials and that school children have some expectation of privacy with respect to personal items brought to school.   Id. at 338-39.   However, the Court stopped short of imposing a probable cause standard for searches in a school setting.   Id. at 341.   Instead, the Court determined that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search."   Id. at 341.   Reasonableness under these circumstances was to be judged

first by considering whether the search was justified at its inception; and second, whether the search actually conducted was reasonably related to the scope of the circumstances that justified the search in the first place.  <u>Id.</u>

Further explaining, the court stated that a search is considered justified at its inception "when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."  <u>Id.</u> at 342.  The permissible scope of the search must be reasonably related to the objectives of the search and "not excessively intrusive in light of the age and the sex of the student and the nature of the infraction."  <u>Id.</u>

After considering the above factors, the Court concluded that the initial search of T.L.O.'s purse was justified because, based on the allegation that T.L.O. had been smoking in the restroom, the assistant principal's suspicion that she might have cigarettes in her purse was reasonable.  <u>Id.</u> at 347.  The discovery of the rolling papers in T.L.O.'s purse gave rise to the reasonable suspicion that T.L.O. was carrying marijuana in her purse and justified the more extensive search.  <u>Id.</u>  Once the search uncovered evidence of drug-related activities, it was not unreasonable for the assistant principal to search the zippered compartments of the purse to find the drug ledger and to read the two letters to determine whether they contained any additional

evidence of drug dealing.   Id.

In Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646 (1995), the Supreme Court considered whether the school district's policy that all students participating in interscholastic athletics submit to drug testing violated those students' Fourth Amendment rights.   The Court found that the compelled urine testing was a search to be judged under the Fourth Amendment for reasonableness.   Id. at 652. The Court rejected the argument that need for urine testing be based on a probable cause standard.   Id. at 653.   Instead, in the case of suspicionless searches, the Court found that the reasonableness of the search will be judged on whether the student had a legitimate expectation of privacy.   Id. at 654.   Finding that student athletes had a lesser expectation of privacy based on regulations requiring them to submit to a preseason physical exam, acquire insurance coverage, maintain a minimum grade point average and comply with other student rules of conduct, the Court determined that the degree of intrusion inflicted by the urine testing was nearly identical to those typically encountered by persons using a public restroom.   Id. at 658.   Balancing the minimal invasion of privacy with the school district's interest in deterring drug use among its student athletes, the Court concluded that the school district's policy was reasonable and, therefore, constitutional.   Id. at 665.

In a more recent case, the U.S. Supreme Court reaffirmed that

searches in a school setting must be reasonably related in scope to the circumstances that justified the need to search in the first place.  See Safford Unified Sch. Dist. No. 1 v. Redding, ___ U.S. ___, 129 S.Ct. 2633, 2642 (2009).  There, a thirteen-year-old student was suspected of being the source of a prescription drug confiscated from another student.  Id. at 2640.  The Court found that the suspicion that the student was involved in pill distribution was enough to justify a search of her outer clothing and backpack, which the Court characterized as "not excessively intrusive."  Id. at 2641.  However, the Court found that requiring the thirteen-year-old student to remove her outer clothing and submit to a search of her underwear in the presence of two school officials was so intrusive that it required additional, distinct elements of justification.  Id.

A few years earlier, in Porter v. Ascension Parish Sch. Bd., 393 F.3d 608 (5th Cir. 2004), the U.S. Court of Appeals for the Fifth Circuit considered the permissible scope of a physical search of a high school student after his younger brother brought to school a sketch pad containing a crude drawing made by the student two years earlier showing the school in a state of siege.  Porter, 393 F.3d at 612.  School officials summoned the older student to the office and confronted him with the picture.  Id.  He admitted he had drawn it two years earlier.  Id.  School officials searched his person and backpack.  Id.  They discovered a box cutter and

several notebooks containing depictions or references to death, drugs, sex, and gang symbols.   Id.   The student offered explanations for the items: the box cutter was used in his after-school job in a grocery store; the references to death were part of a homework assignment; and the "gang symbols" referred to his group of friends, whom the principal did not deem to be threats.   Id. The older student was expelled from school, and his mother sued for violations of the student's First, Fourth and Eighth Amendment rights.   Id.

Applicable to the present situation was the court's discussion of whether the principal's search of the student's person and backpack violated the Fourth Amendment.   Citing to T.L.O., the court stated that the legality of school searches "depends upon the 'reasonableness,' under all the circumstances, of the search."   Id. at 622.   In determining that the search was justified at its inception, the court found that the two-year-old drawing provided a reasonable basis to suspect that the search would produce evidence of an infraction of a school rule or policy.   Id. at 622. The court found that, because school officials have a "significant interest in deterring misconduct on the part of students," the initial decision to search the student after he admitted to drawing the sketch was "appropriate under the circumstances."   Id. at 622-23.

Acknowledging that the searches of the student's backpack,

textbooks, wallet and person were invasive of personal privacy, the court found that the scope of the search was reasonable and justified by the school's interest in ensuring the safety and welfare of the other students.  Id. at 623.

### i. Stephanie Langner

Clearly, in light of the above case law, A.M. had a privacy interest in the contents of her phone.  In determining whether Plaintiffs have alleged a Fourth Amendment violation, the court first considers whether the search of A.M.'s phone by Langner was justified at its inception.  See T.L.O., 469 U.S. at 341.  Langner stated in her deposition that she observed a large group of students huddled in the hallway between classes looking at a device.[42]  Langner noticed that as she approached the group, A.M. appeared to manipulate the buttons and put the device in her pocket.[43]  Believing that the group was looking at a cell phone, Langner demanded the device from A.M.[44]  A.M. pleaded with Langner not to take it and insisted that she had not been using it, appealing to Langner to confirm that fact with A.M.'s friends.[45]

At her deposition, A.M. agreed that she had asked Langner not

---

[42]    DMSJ, Ex. C, Deposition of Stephanie Langner, pp. 11-12.

[43]    Id. at p. 12.

[44]    Id. at p. 13.

[45]    Id. at p. 14.

to take the phone.[46]  However, when asked if she remembered telling Langner that she had not been using the phone, A.M. stated that she could not remember.[47]  Langner testified that the school district's policy provided that students were not allowed to have their phones out; if a student was found to be using a phone, it would be confiscated and the student charged a 15-dollar fine.[48]  Langner explained that based on her observations, she had a suspicion that A.M. had been using the phone, despite her denial, and decided to review the last text messages to determine whether A.M. had used the phone that day at school.[49]

The search in the present case was made in circumstances very

---

[46]    DMSJ, Deposition of A.M., p. 14.  The deposition stated:

Q.  Okay.  But I think your own testimony was that you were asking her not to take the phone, correct?

A.  That's correct.

Q.  Because, as you stated, you'd already had it taken up and you didn't want to pay for it; correct?

A.  That's correct.

[47]    Id.  A.M. testified:

Q.  Okay.  Did you tell Ms. Langner that you had not been using the phone?

A.  I don't remember.

Because A.M.'s testimony is insufficient to establish a genuine issue of fact on this point, the court must consider Langner's testimony that A.M. denied using the cell phone as undisputed.  Anderson, 477 U.S. at 256 (a party opposing a properly supported motion for summary judgment may not rest on allegations or denials in the pleadings but must set forth specific facts from which a jury might return a verdict in his favor).

[48]    DMSJ, Ex. C, Deposition of Stephanie Langner, p. 16.

[49]    Id. at pp. 25-26.

similar to those approved by the Supreme Court in New Jersey v. T.L.O. There, the student not only denied smoking in the restroom but denied ever smoking. In finding that the assistant principal's search of the student's purse was justified at its inception, the Court explained that a search met constitutional muster "when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." T.L.O., 469 U.S. at 341.

In the present case, Langner had a reasonable individualized suspicion that a search of the phone would reveal that A.M. had been using it during school hours, a violation of school policy. And, in light of A.M.'s denial that she used the phone, it was not unreasonable for Langner to attempt to confirm that A.M. had used the phone during school hours in order to justify seizure of the phone and the resulting fifteen-dollar penalty.[50]

In so finding, the court rejects Plaintiffs' argument that Langner had no justification to search A.M.'s phone to determine if she had been using it merely because the principal interpreted the cell phone policy to prohibit even the display of a cell phone. It is not the court's role to provide the correct interpretation of school policy. See Wood v. Strickland, 420 U.S. 308, 326 (1975)("[Section] 1983 does not extend the right to relitigate in

---

[50] Langner stated that if she merely saw a phone on a holster, she would tell the student that he should not have it out, concluding, "The only time I confiscate a phone is when I believe that a student has been using it." Id. at p. 14.

federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations."). Thus, the court concludes that Langner's search of the phone was related to the reasonable suspicion that A.M. used the phone during school hours and was "justified at its inception." T.L.O., 469 U.S. at 341.

Having found that Langner's search was "justified at its inception," the court must consider whether the actual scope of the search was reasonable. T.L.O., 469 U.S. at 341. A search "will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." T.L.O., 469 U.S. at 342.

In support of their position that the scope of Langner's search was unreasonable, Plaintiffs cite to Klump v. Nazareth Area Sch. Dist., 425 F.Supp.2d 622 (E.D. Pa. 2006). In that case, the school's policy permitted students to carry cell phones, but not use or display them during school hours. Klump, 425 F.Supp.2d at 630. When a student's cell phone accidentally fell out of his pocket during class, the teacher confiscated the phone. Id. She and another school official began calling other students whose numbers were listed on the phone to determine if they, too, were violating the school's cell phone policy. Id. The school officials also accessed the student's text messages and sent

23

messages via that phone to the student's younger brother without identifying themselves. Id. The teacher claimed that while she was in possession of the phone, a text message was received from the student's girlfriend which she interpreted to be drug-related. Id. at 631.

The student was disciplined and later filed suit, alleging a number of theories of recovery. Id. Relevant to this dispute, the defendants challenged the sufficiency of the complaint to state a violation of the Fourth Amendment. Id. at 628-29.

Relying solely on the facts as alleged in the complaint, the court found that the teacher was justified in seizing the cell phone because the student had violated the school's policy prohibiting the display of a cell phone during school hours. Id. at 640. However, the court went on to find that the allegations concerning the school officials' subsequent search of the phone in order to find evidence of other students' misconduct alleged a Fourth Amendment violation because it went beyond the scope of a reasonable search. Id.

In another case, a district court found that school officials were entitled to qualified immunity for a search of a cell phone used in violation of a school regulation. In J.W. v. Desoto County Sch. Dist., Civil Action No. 2:09cv155, 2010 WL 4394059 (N.D. Miss. Nov. 1, 2010), a student was caught using his cell phone on school grounds, a violation of school rules. J.W., 2010 WL 4394059, at

24

*1. School officials accessed the photos stored on the phone and found several of the student wearing what they believed to be gang colors and displaying gang signs. Id. Citing a school rule prohibiting the wearing of clothing or accessories associated with any gang, school officials suspended the student from school. Id. at *2. His mother brought suit, alleging, among other claims, that school officials violated the student's Fourth Amendment rights. Id. at *3.

The court stated, "Upon witnessing a student improperly using a cell phone at school, it strikes the court as being reasonable for a school official to seek to determine to what end the student was improperly using that phone." Id. at *4. The court went on to suggest that the student could have been using the phone to cheat by viewing stored information or to communicate with another student who would also be subject to disciplinary action. Id. The court did not offer any analysis to connect the improper use of the phone by the student to the school officials' need to access photos stored on the phone. The court concluded, based on its review of the extant legal authority, that the school officials were entitled to qualified immunity because the search was not "unlawful" and "a school teacher lacking legal training should not be forced to defend himself at trial for his split-second decision in this regard." Id. at *4-*5.

The only justification proffered by Langner for the search of

25

A.M.'s phone was to determine whether A.M. had used the phone during school hours.[51]    That justification must define the reasonableness of the search.  For example, in T.L.O., the Supreme Court found that because the initial search of the student's purse for cigarettes was justified, the results of that search - the rolling papers - justified further search into the other contents of the purse.  T.L.O., 469 U.S. at 347.  When that search uncovered marijuana, school administrators were justified in performing a thorough search of the purse, including reading of letters.    Id.  Thus, the court concludes that a continued search must be reasonable and related to the initial reason to search or to any additional ground uncovered during the initial search.

In the present case, Langner turned on the phone and accessed the Sent Text box.[52] Langner testified that she saw from phone's display that A.M. had sent texts that day.[53]   Langner also agreed that she did not need to search the contents of the texts to

---

[51]    DMSJ, Ex. C, Deposition of Stephanie Langner, pp. 18-19.  Relying on an unauthenticated telephone bill, Plaintiffs argue that A.M. was not using the phone during school hours in an attempt to impeach Langner's testimony on the scope of her search.  The court cannot rely on unauthenticated summary judgment evidence, hence this evidence cannot raise a fact issue that A.M. did not use the cell phone during school hours.  See Montes v. Ransom, 219 Fed. App'x 378, 380 (5th Cir. 2007)(court cannot rely on unauthenticated evidence).

[52]    DMSJ, Ex. C, Deposition of Stephanie Langner, p. 26.  Langner was asked, "And you would agree that in order to determine whether [A.M.] had been texting that day, all you would need to do is review the last text messages that were in her sent box, correct?"  Langner responded, "I believe that was the easiest way."

[53]    Id. at p. 21.

determine if A.M. used the phone during school hours.[54]  However, as Langner was scrolling from the earliest text through the latest sent texts, a nude picture of A.M. came up on the screen.[55]  Langner avers that the picture was accessed by accident.[56]

Langner admitted that all she needed to do was to determine if texts were sent by A.M. that day and she did not have to open any text message to determine that fact.[57]  However, despite that awareness, Langner opened a text message and discovered the nude picture of A.M.  In light of Langner's testimony, the court cannot conclude as a matter of law that her search of the contents of A.M.'s text messages was reasonable.  The trier of fact must determine if Langner's actual search was reasonable under the circumstances or if it violated A.M.'s Fourth Amendment rights.

Although there is a fact issue whether the scope of Langner's search violated A.M.'s Fourth Amendment rights, Langner may still be entitled to qualified immunity if the search she actually performed did not violate clearly established law at the time of the search.  Hare, 135 F.3d at 326.

---

[54]    Id. at p. 20.

[55]    Id. at pp. 20-21. Langner stated, "The way that I found the picture was as I was looking - as I searched through the sent box, instead of searching - starting at the most recent text, I pushed the different arrow and started with the latest - or earliest text, and the earliest text is where I saw the picture. Id. at p. 20.

[56]    Id. at p. 26.  Langner testified that she was not sure when the picture had been sent by A.M.  Id. at 22.  Thus, there is no evidence that the picture was sent that day.

[57]    DMSJ, Ex. C, Deposition of Stephanie Langner, p. 26.

The contours of the constitutional right must be sufficiently clear that a reasonable official would understand that her actions violate that right.  Felton v. Polles, 315 F.3d 470, 478 (5th Cir. 2002).  While previous cases need not have materially equivalent facts to place school officials on notice that their conduct violated clearly established law, it is enough that they have "fair warning that their [conduct] was unconstitutional."  Hope v. Pelzer, 536 U.S. 730, 740 (2002).

In the summary judgment context, a school official's claim of qualified immunity shifts the burden to the plaintiff to rebut the defense by establishing that the official's conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005).

In the present case, there is no need for additional discussion of what the clearly established law was at the time of the incident because Langner's own testimony established that she was aware that she did not have the right under the law to an unfettered search of a student's cell phone without reasonable suspicion.[58] Langner further admitted that the reasonable suspicion justifying her search was to determine if A.M. had used her cell phone on that day during school hours and that she did not need to

---

[58]     DMSJ, Ex. C, Deposition of Stephanie Langner, p. 60.

access the content of any message to determine that fact.[59]

Thus, whether Langner is entitled to qualified immunity depends on the jury's determination of the reasonableness of the scope of the search itself, that is, whether Langner unreasonably accessed the content of A.M.'s cell phone messages or whether Langner's conduct was reasonable under the circumstances.

### ii. Scott Crowe

It is undisputed that Crowe was not involved in the search of A.M.'s phone and learned of the results of the search after Langner informed him of what she had found.[60]  Plaintiffs, citing Wilson v. Town of Mendon, 294 F.3d 1 (1st Cir. 2002), argue that Crowe may be held liable for the conduct of a subordinate where his "action or inaction is affirmatively linked to [the behavior of the subordinate] in a sense that it could be characterized as supervisory encouragement, condonation, or acquiescence."[61]  Wilson, however, only cited another case in passing for this principle. See Wilson, 294 F.3d at 7 (citing Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).  As the facts of Wilson arise in an excessive-use-of-force context and the Fifth Circuit has never imposed liability on a supervisor for condoning or acquiescing in the conduct of a subordinate, the court does not

---

[59]    Id. at p. 62.

[60]    See DMSJ, Ex. E., Deposition of Jennifer Mendoza, pp. 9-10.

[61]    Plaintiffs' Response, Docket Entry No. 19, p. 17.

find <u>Wilson</u> to be persuasive authority for imposing supervisory liability in this circuit.

In this circuit, a supervisor may be individually liable under Section 1983: (1) if he is personally involved in the constitutional deprivation; (2) if he implements a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation;" <u>Cozzo v. Tangipahoa Parish</u>, 279 F.3d 273, 289 (5th Cir. 2002)(quoting <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 (5th Cir. 1987)) or (3) for a failure to train or supervise subordinates if (a) the supervisor failed to train or supervise; (b) a causal link exists between the failure and the violation of plaintiff's rights; and (c) the failure to train or supervise amounts to deliberate indifference. <u>Estate of Davis ex rel. McCully v. City of N. Richland Hills</u>, 406 F.3d 375, 381-82 (5th Cir. 2005).

Here, Plaintiff claims that Crowe condoned or ratified Langner's illegal search when he imposed discipline based on her later admissions that she showed nude pictures of a boy to other students. However, the Fifth Circuit has limited the application of a ratification theory of liability to "extreme factual situations." See <u>Peterson v. City of Fort Worth, Texas</u>, 588 F.3d 838, 848 (5th Cir. 2009).

In <u>Peterson</u>, the plaintiff sought to hold the City of Fort Worth liable for an officer's excessive use of force under a theory

that the use of excessive force was so common and well-known that it represented an official policy. Peterson, 588 F.3d at 842. Peterson also alleged that the City was liable because it ratified the use of excessive force after an internal investigation determined that the officers' conduct complied with department policies, citing City of St. Louis v. Praprotnik, 485 U.S. 112 (1988)("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."), in support. Peterson, 588 F.3d at 848.

The Peterson court found that its own precedent had limited the theory of ratification to extreme situations, such as where officers barraged a truck with gunfire, killing an innocent occupant, Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), and rejected a ratification theory of liability in Snyder v. Trepagnier, 142 F.3d 791 (5th Cir. 1998)(concerning the shooting of a suspect fleeing from police). Id. The court concluded that the city's failure to discipline officers for the alleged excessive use of force did not raise a fact issue of ratification. Id.

Here, even if the finder of fact determines that Langner violated A.M.'s right to be free from an unreasonable search, Crowe's determination that A.M. should be disciplined for showing nude pictures of a young man to other students is not such an "extreme factual situation" to warrant application of a

31

ratification theory of liability.    Also, Plaintiffs have put forward no legal support for their contention that a ratification theory can be applied to a supervisory official, as opposed to the policy-maker itself.    Imposing such liability simply because the supervisor did not take affirmative steps to disassociate himself from a subordinate's actions would be akin to respondeat superior liability, which the courts have expressly rejected in the context of Section 1983 liability.    See Estate of Davis ex rel. McCully, 406 F.3d at 381 (stating that failure to supervise must amount to deliberate indifference).

Thus, as Plaintiffs have failed to raise a fact issue that Crowe violated A.M.'s constitutional rights, Crowe's motion for summary judgment should be granted.    In light of this recommendation, the court does not alternatively address Crowe's claim of qualified immunity.

### b. Klein ISD

In order to attribute Section 1983 liability to a school district, a plaintiff must establish the elements of constitutional violation and must demonstrate that the district had a policy or custom which resulted in the constitutional injuries alleged.    See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).    The plaintiff cannot rely on the theory of respondeat superior.    Id. at 691; Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002).

32

The burden on a plaintiff is to prove three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda, 291 F.3d at 328; see also Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).   In other words, a plaintiff must "identify the policy, connect the policy to the [district] itself and show that the particular injury was incurred because of the execution of that policy." Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984).

The courts acknowledge several ways that a plaintiff can prove the existence of an official policy.   Most obviously, an unconstitutional formal policy adopted by the local legislative body meets this requirement. See Monell 436 U.S. at 690.  Also, a decision of a person who is authorized under state law or who has been delegated final decision-making power in the area of the alleged constitutional violation is considered an official policy. Praprotnik, 485 U.S. at 123-24.

In the present case, Plaintiffs point to Klein ISD's cell phone policy as "unconstitutionally vague" because it fails to put the student on notice as to the exact nature of the prohibited activity prior to imposing punishment.   Plaintiffs' evidence supporting a claim of vagueness is that Langner testified that it was her practice to confiscate a phone only if the student had been

33

actively texting or placing a call during school hours while Crowe
and Officer Mansfield testified that the policy prohibited any
display of the phone, whether actually used or not.

Generally, "'a law is unconstitutionally vague if it (1) fails
to provide those targeted by the statute a reasonable opportunity
to know what conduct is prohibited, or (2) is so indefinite that it
allows arbitrary and discriminatory enforcement.'" A.M. ex rel.
McAllum v. Cash, 585 F.3d 214, 224-25 (5th Cir. 2009)(quoting
Women's Med. Ctr. of N.W. Houston v. Bell, 248 F.3d 411, 421
(2001)).  However, a more lenient standard is employed when
considering whether a school policy is unconstitutionally vague.
Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686
(1986)(quoting T.L.O., 469 U.S. at 340).

In Fraser, the Supreme Court confronted a challenge to a
school policy that prohibited "[c]onduct which materially and
substantially interferes with the educational process . . .
including the use of obscene, profane language or gestures."
Fraser, 478 U.S. at 678.  A student gave a speech at a school
assembly in which he deliberately described his candidate in terms
of an explicit sexual metaphor.  Id.  He had discussed the contents
of his speech with two teachers in advance and had been warned that
the speech was inappropriate and that he might be punished if he
proceeded to deliver it at the assembly.  Id. The student was
suspended three days and his father brought suit, claiming that his

son's First Amendment rights had been violated and that the school's disruptive-conduct rule was unconstitutionally vague. Fraser, 478 U.S. at 679.

Citing T.L.O., the Supreme Court stated that the constitutional rights of students in public schools were not coextensive with the rights of adults in other settings. Fraser, 478 U.S. at 683. The Court found that the determination of what speech was inappropriate for the classroom or in a school assembly belonged to the school board and that school officials were within their authority to discipline the student for his vulgar speech. Fraser, 478 U.S. at 683, 686.

Responding to the student's argument that his due process rights were violated because the school policy did not put him on notice that delivery of the speech could result in disciplinary action, the Court found the student's argument "wholly without merit" and found that the school rule proscribing obscene language and the admonitions of teachers gave the student adequate warning. Fraser, 478 U.S. at 686. The Supreme Court explained:

> We have recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures and we have respected the value of preserving the informality of the student-teacher relationship." Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.

Fraser, 478 U.S. at 686 (quoting T.L.O., 469 U.S. at 340.)

35

In the present case, the school policy prohibited students from using cell phones during school hours.   As a matter of enforcement, Langner took a narrow view of what conduct was prohibited by the policy and would only confiscate a phone from a student it if had been actually used, in contrast to Crowe's interpretation which conflated a prohibited use of the phone with any display of the phone.   The policy is not unconstitutionally vague simply because two administrators have slightly different interpretations of the policy when it comes to enforcement.   The policy was specific enough to put A.M. on notice that her use of a phone during school hours was a violation of school rules.   And, the search of the phone in this case was not a disciplinary sanction requiring advance notice in the school policy, but was to ascertain if A.M. broke the rule in the first place.

Plaintiffs have failed to raise a claim that Klein ISD's cell phone policy was "the moving force of the violation of a federally protected right."   See Monell, 436 U.S. at 694.

A.M. also argues that by delegating enforcement of the cell phone policy to Crowe and Marek, the Klein ISD school board in fact "delegated responsibility to Marek and Crowe to adopt and promulgate an official policy with regard to the enforcement of the District's cell phone policy, and determine under what circumstances a cell phone could be seized and searched in order to

36

enforce the policy."[62]  This appears to be an attempt to impose respondeat superior liability on Klein ISD for the enforcement decisions of Crowe and Marek.  Plaintiffs fail to support this argument with either facts or law.

Plaintiffs' argument that Klein ISD ratified Langner's actions, thereby adopting an official policy of unconstitutional searches, fails for the same reason it failed with respect to Crowe.  The ratification theory of liability has only been applied in extreme factual circumstances, and the present circumstances cannot be considered extreme.  See Peterson, 588 F.3d at 848.

Finally, Plaintiffs argue that Klein ISD is liable for failing to train its staff on the purpose of the cell phone policy and failing to provide any guidance on enforcement of the policy.

Courts have recognized that, under limited circumstances, the failure to discipline, to train, or to supervise employees may give rise to Section 1983 liability.  Bd. of the County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 407 (1997); Pineda, 291 F.3d at 331-32; Thompson, 245 F.3d at 459; Piotrowski, 237 F.3d at 581.  In such cases, a plaintiff must prove: 1) the inadequacy of the procedures for discipline, training, or supervision; 2) the district's deliberate indifference to the rights of persons affected by those procedures; and 3) a direct causal connection between the inadequate procedures and the particular constitutional

---

[62]    Plaintiffs' Response, Docket Entry No. 19, p. 15.

injury suffered by the plaintiff. See Pineda, 291 F.3d at 331-32; Thompson, 245 F.3d at 459; Conner v. Travis County, 209 F.3d 794, 796 (5th Cir. 2000).

Liability is imputed to the school district only upon a showing of the policymaker's deliberate indifference to the constitutional rights of its citizens. Brown, 520 U.S. at 407, 409; Snyder, 142 F.3d at 796. Courts repeatedly emphasize how very high the standard of proof is to impute liability in these cases. See, e.g., Brown, 520 U.S. at 405, 407, 410 (describing the deliberate indifference standard as "rigorous" and "stringent" and differentiating it from "simple or even heightened negligence"); Piotrowski, 237 F.3d at 579 (stating that the deliberate indifference standard for facially innocuous policies is a "stringent test"); Brown v. Bryan County, Okla., 219 F.3d 450, 461 (5th Cir. 2000)(referring to the evidentiary standard as a "vigorous test"); Snyder, 142 F.3d at 796 (referring to the culpability standard as "a high standard of proof"). This culpability standard, in effect, requires a "decision by the city itself to violate the Constitution." Harris, 489 U.S. at 395.

In the context of "failure to discipline," "failure to train," and "failure to supervise" cases, a single incident that violates the constitution is rarely sufficient to establish deliberate indifference. See Brown, 520 U.S. at 409; Thompson, 245 F.3d at 459; Piotrowski, 237 F.3d at 582; Snyder, 142 F.3d at 798; Fraire

38

v. City of Arlington, 957 F.2d 1268, 1278-79 (5th Cir. 1992).

In Fraire, the Fifth Circuit specifically acknowledged that the failure to discipline a single officer for a single incident does not give rise to an inference that a local government had an official policy authorizing misconduct. Fraire, 957 F.2d at 1278-79; see also Piotrowski, 237 F.3d at 582 ("[I]t is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case."). With regard to training, only if, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," can the policymakers reasonably be said to have been deliberately indifferent to the need for training. Harris, 489 U.S. at 390.

For the most part, then, a pattern of frequent violations of constitutional rights is necessary to illustrate that the need for further discipline, training, or supervision was so obvious and the violation of constitutional rights so predictable that the district's failure to provide it rose to the level of deliberate indifference. Cf. id.; Brown, 520 U.S. at 407, 409; Thompson, 245 F.3d at 459; Piotrowski, 237 F.3d at 582; Conner, 209 F.3d at 797. A pattern of violations is what eventually alerts the district that the program is deficient. Brown, 520 U.S. at 407. In turn, a district's dedication to an inadequate program, despite notice of

its constitutional deficiencies, is evidence of deliberate indifference.  <u>Id.</u>

In addition to proving deliberate indifference, a plaintiff must satisfy the causation requirement by showing that the identified deficiency led directly to the alleged constitutional violation.  <u>Brown</u>, 520 U.S. at 405; <u>Harris</u>, 489 U.S. at 391; <u>Snyder</u>, 142 F.3d at 795, 796.  Again, a pattern of similar violations by inadequately disciplined, trained, or supervised employees may show that the lack of proper procedures, rather than some other factor, was in fact the "moving force" behind the plaintiff's alleged constitutional violation.  <u>See Brown</u>, 520 U.S. at 407-08; <u>Harris</u>, 489 U.S. at 390-91.

As the court understands Plaintiff's argument, Plaintiff argues that Klein ISD failed to provide any training regarding the enforcement of the cell phone policy to its employees.  In response, Klein ISD argues that it adopted policies addressing searches of students and routinely trained its personnel on those policies.[63]  Langner testified that she received training on the

---

[63]   <u>See</u> DMSJ, Ex. B-1, Klein ISD Policy re: Searches of Students.  The policy stated, in pertinent part:

> School officials may conduct searches of a student's outer clothing, pockets, or property upon obtaining the student's voluntary consent or if school officials have reasonable grounds for suspecting that the search will uncover evidence that the student is in violation of this policy.  Searches conducted in accordance with this policy shall be reasonably related to the objectives of the search and shall not be excessively intrusive in light of the age and sex of the student and the nature of the infraction.

school policy for searches of students.[64]  Crowe testified that he trained his staff at the beginning of every school year on district policies, including the circumstances under which students could be searched.[65]  Also, Klein ISD had a grievance procedure through which A.M. could have challenged the seizure of her phone.[66]

The crux of Plaintiffs' argument is that, because Langner's expressed motivation in searching A.M.'s cell phone was enforcement of the cell phone policy, the policy was the motivating force behind the violation of her rights.  This is simply insufficient, under the case law, to impose liability on Klein ISD.

As Plaintiffs have not raised any material issue of fact that Defendant Klein ISD had inadequate procedures for training on its policies or that Defendant Klein ISD so failed to supervise its employees as to act with deliberate indifference to the rights of Plaintiffs, Klein ISD's motion for summary judgment should be granted.

### 2.   Plaintiffs' State Law Claims

#### a.   Exhaustion of Administrative Remedies

The Texas Education Code provides that a plaintiff must first exhaust the school district's administrative process before bringing claims against any professional employee.  Langner and

---

[64]   See DMSJ, Ex. C., Deposition of Stephanie Langner, pp. 60-61.

[65]   See DMSJ, Ex. D, Deposition of William Scott Crowe, pp. 16-18.

[66]   See DMSJ, Ex. B, Affidavit of Stephanie Langner, ¶ 17.

Crowe[67] argue that the state law claims must be dismissed because Plaintiffs failed to exhaust administrative remedies. The Education Code states:

> A person may not file suit against a professional employee of a school district unless that person has exhausted the remedies provided by the school district for resolving the complaint.

Tex. Educ. Code, § 22.0514. Crowe and Langner meet the definition of "professional employee." See Tex. Educ. Code § 22.051(a)(1).

Although the Klein ISD grievance policy could be more explicit to expressly include grievances against administrators for committing torts against students, it does allow for a parent or student to complain about school administrators' decisions and practices. The policy states:

> After informal discussions with the administration, if a parent or student is dissatisfied with administrative practices and decisions or a Board policy, he or she may submit a Student/Parent Complaint Form to the supervising administrator . . . within ten business days of the date that the problem or incident first occurred.[68]

Plaintiffs contend that they exhausted their administrative remedies by appealing A.M.'s assignment to the DAEP. However, this argument misses the point. A.M.'s assignment to the DAEP was based

---

[67] The court acknowledges that it has recommended that the claims arising against Crowe under federal law be dismissed, thereby potentially terminating the claims against him over which it has original jurisdiction. The decision to proceed to address the supplemental state law claims is a matter committed to the discretion of the court. See Moore v. Willis Ind. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2001); 28 U.S.C. § 1367(c). Because the court must address identical issues with respect to Langner, the court considers Crowe's motion for summary judgment on the state law claims in the interests of judicial economy.

[68] See DMSJ, Ex. F-6, Klein ISD Grievance Policy, p. 1.

on A.M.'s conduct in showing other students pictures of a young man's penis; Plaintiffs exhausted their remedies with respect to that decision. The present suit presents a different complaint – that Langner and Crowe negligently violated A.M.'s constitutional rights and intentionally inflicted emotional distress on A.M. by searching her cell phone and assigning her to the DAEP. By failing to notify the school district of their complaints that Langner and Crowe, in making decisions on behalf of the school district, violated state tort duties, Plaintiffs failed to exhaust their administrative remedies for the present tort claims.[69] Plaintiffs have failed to explain why the bar to suit found in the Texas Education Code should not apply to their claims against Langner and Crowe. Accordingly, Defendants Crowe and Langner's motion for summary judgment should be granted on this statutory basis.

### b. Professional Immunity

Alternatively, Langner and Crowe argue that professional immunity shields them from Plaintiffs' claims. The court agrees.

The Texas Education Code, § 22.0511 provides in part:

> (a) A professional employee of a school district is not personally liable for any act that is incident to or within the scope of duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

---

[69]    Plaintiffs did not have to exhaust state administrative remedies to pursue claims made under 42 U.S.C. § 1983. See McNeese v. Bd. of Ed. for Comm. Unit Sch. Dist. 187, Cahokia, Ill., 373 U.S. 668, 670 (1963).

In order to establish an entitlement to immunity, a person must show that (1) he or she is a professional employee of a school district; (2) he or she is acting incident to or within the scope of duties; (3) the act involves the exercise of judgment or discretion; and (4) the act does not fall within the stated statutory exceptions. See LeLeaux v. Hamshire-Fannett Indep. Sch. Dist., 835 S.W.2d 49, 52-53 (Tex. 1992).

In opposing summary judgment on this defense, Plaintiffs focus on the second element, whether the actions taken were within the scope of Crowe's or Langner's duties. Specifically, they argue that Langner is not entitled to professional immunity because she admitted that she did not have any reason to believe that A.M. had violated any other school rule other than the cell phone policy prior to searching the contents of the phone. As Plaintiffs interpret the policy, once A.M.'s cell phone had been confiscated, there was no legitimate reason to search the phone and, therefore, any search of the phone was outside Langner's duties as a school administrator. With regard to Crowe, Plaintiffs argue that Crowe acted outside of his authority when he relied on evidence tainted by an illegal search in punishing A.M. for showing nude pictures of a young man to her friends. Plaintiffs also contend that Crowe did not have the discretion to approve an unlawful search of A.M.'s phone. Plaintiffs cite no law in support of either argument.

Under Texas law, in order to find that an act was committed by

an employee within the course and scope of his employment, the finder of fact must determine that the act was "(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." Williams v. United States, 71 F.3d 502, 506 (5th Cir. 1995)(citing Drooker v. Saeilo Motors, 756 S.W.2d 394, 397 (Tex. App. - Houston [1st Dist.] 1988)). To come within the scope of employment, the conduct must be of the "same general nature" as the conduct authorized by the employer or incidental to the conduct authorized. Kelly v. Stone, 898 S.W.2d 924, 927 (Tex. App. - Eastland, 1995)(citing Smith v. M Sys. Food Stores, Inc., 156 Tex. 484, 297 S.W.2d 112, 114 (1957)). In the absence of disputed facts, the scope of authority may be a question of law. See Gen. Prod. Co. v. Black Coral Invests., 715 S.W.2d 121, 123-24 (Tex. App. - Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Texas courts have liberally interpreted scope of employment for purposes of professional immunity under the Texas Education Code. In Chesshir v. Sharp, 19 S.W.3d 502 (Tex. App. - Amarillo, 2000), a teacher brought an electric frying pan to school to make doughnuts in class as a part of a lesson about the letter "d". A student stepped on the cord, causing the pan to splash hot oil on his face, neck and back. Chesshir, 19 S.W.3d at 504. The parents sued the teacher for negligence and the teacher claimed she was immune from suit under Sections 22.051 and 22.055 of the Texas

Education Code. Id. The parents argued that the teacher was outside the scope of her employment because she failed to seek permission from school administrators to use the frying pan as part of a lesson and, that after the incident, "hot appliances" were banned from use in the school. Chesshir, 19 S.W.3d at 505.

In finding that the use of the frying pan was within the teacher's scope of employment, the court stated, "Whether one is acting within the scope of his employment depends upon whether the general act from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed." Chesshir, 19 S.W.3d at 504.

Explaining further, the court stated that whether an act is deemed within the scope of employment was not dependent on whether the employer expressly approved it in advance or banned similar conduct afterwards. Chesshir, 19 S.W.3d at 505 (citing Downing v. Brown, 925 S.W.2d 316, 320 (Tex. App. –Amarillo 1996, rev'd on other grounds, 935 S.W.2d 112 (Tex. 1996)). The court also rejected the plaintiff's argument that the use of the frying pan was outside the scope of the teacher's employment because it was intended to be fun, involved cooking, and was not part of her original lesson plan. Chesshir, 19 S.W.3d at 506.

Here, it is undisputed that Langner, an assistant principal, had the authority to enforce school regulations and seized the

phone from A.M. in furtherance of a school disciplinary policy.[70] It was not necessary for Langner to have express authorization from a supervisor prior to seizing the phone because enforcement of school disciplinary rules was clearly in furtherance of her employer's business and part of her job duties.[71]   The court only looks to whether the general course of conduct being undertaken was for the employer's business. Chesshir, 19 S.W.3d at 505.  As the Chesshir court explained:

> For instance, if an employee making a delivery pursuant to the directives of his employer runs a red light, the act making the delivery on behalf of his employer determines whether he acted within the scope of his employment, not whether his employer directed him to run the light.

Id.  Thus, even if Langner's employer had not authorized her to open the phone and search its contents, Langner's search of the phone is still within the scope of her employment because it was taken in furtherance of her responsibility to maintain school discipline.  The fact that Langner's search may be determined by a jury to have exceeded the parameters of the Fourth Amendment does not change this result.

It is undisputed that Crowe had the authority to discipline

---

[70]    See Plaintiffs' Amended Complaint, Docket Entry No. 17, p. 3; DMSJ, Ex. E., Deposition of Jennifer Mendoza, pp. 9-13, 21-22.

[71]    See DMSJ, Ex. D. Deposition of Scott Crowe, p. 11. ("The grade level administrator [Langner] is charged with doing the investigation . . . .").

A.M. for violating school policy.[72] Thus, his decision sending A.M. to the DAEP was taken in furtherance of his position of principal and was within the scope of his position, even if it is determined that Langner's search of the phone exceeded the Fourth Amendment.

The court concludes that the actions taken by Crowe and Langner were within the general authority granted to them by the school district. The court next turns to whether the disputed actions involve the use of discretion.

In Downing v. Brown, 935 S.W.2d 112 (Tex. 1996), several school administrators were sued when a student was injured for a second time by students who had injured her in the past. The court of appeals found that because one teacher had not created or posted a classroom discipline plan as required by school district policy, the teacher was not entitled to immunity from suit. Downing, 935 S.W.2d at 114. The Texas Supreme Court reversed, finding that the district's mandate to teachers to develop a classroom discipline plan was not ministerial because it gave the teachers no guidance about such things as the content and substance of the plan, the types of disciplinary techniques to be used, what student misconduct should result in discipline and how to maintain such a plan. Id.

The court stated, "In our view, maintaining classroom discipline involves personal deliberation, decision and judgment."

---

[72]     See Plaintiffs' Amended Complaint, Docket Entry No. 17, p. 4; DMSJ, Ex. E., Deposition of Jennifer Mendoza, pp. 9-13, 21-23.

Id.   The court counseled that in determining whether an action was discretionary or ministerial, "the focus should remain on whether maintaining classroom discipline is a discretionary function. . . . To separate the actions of creating and posting a classroom discipline plan from the broad responsibility of maintaining classroom discipline undermines the effect of the qualified immunity the Legislature meant for § 22.051 to provide."   Id. (internal citation omitted).

Plaintiffs offer no legal support for their contention that the decisions of Crowe and Langner did not involve the use of discretion.   The court concludes that the complained-of actions required the exercise of discretion and that Crowe and Langner are entitled to claim professional immunity from the state law claims asserted against them.

Because the court finds that Crowe and Langner are entitled to professional immunity, the court does not reach their alternative argument that Plaintiffs' IIED claims are barred as duplicative of their other causes of action.

B. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on six separate grounds.[73]

---

[73]   See Plaintiffs' Motion for Summary Judgment, Docket Entry No. 19, pp. 1-2.  Briefly stated, those grounds are: (1) Plaintiff Mendoza has standing to complain about the search of the phone because she paid for the phone's service; (2) the search of the phone was not reasonable at its inception; (3) the actual scope of the search was not reasonably related to the circumstances that justified the search in the first instance; (4) there was no legitimate government interest in student safety outweighing Plaintiffs' privacy interests; (5) the fruits of the search could not be used as a basis to punish A.M.; and (6) Defendants' actions violated clearly established law.

The court has already addressed four of those grounds in considering Defendants' Motion for Summary Judgment.[74]  Remaining are whether Plaintiff Mendoza has a protected privacy interest in the contents of A.M.'s phone and whether the Defendants improperly considered the "fruits" of an unlawful search in punishing A.M.

### 1.  Plaintiff Mendoza's Privacy Interests

The court has found that A.M. had a protectable privacy interest in the contents of her phone, limited by the Fourth Amendment.  Plaintiff Mendoza argues that she, too, had a protectable privacy interest in the contents of A.M.'s cell phone because she was the subscriber to the phone's service network.

In order to establish a Fourth Amendment violation, a person must show that he had a "reasonable expectation of privacy" in the property searched.  U.S. v. Setser, 568 F.3d 482, 490 (5th Cir. 2009)(citing U.S. v. Gomez, 276 F.3d 694, 696-97 (5th Cir. 2001)).  The party must prove "(1) an 'actual, subjective expectation of privacy,' and (2) that the expectation is 'one which society would recognize as reasonable.'" Setser, 568 F.3d at 490-91 (quoting U.S. v. Kye Soo Lee, 898 F.3d 1034, 1037-38 (5th Cir. 1990)).

---

[74]  Plaintiffs' fourth issue, whether there was a legitimate government concern for student safety that outweighed Plaintiffs' privacy interests, appears to be an offshoot of Plaintiffs' argument that the search was unreasonable. In support of this argument, Plaintiffs cite only to Ponce v. Socorro Ind. Sch. Dist., 508 F.3d 765 (5th Cir. 2007), a case involving alleged terroristic threats contained in a student's notebook diary. In Ponce, the court was concerned with the First Amendment issues relative to the student's transfer to an alternative education program and did not consider any Fourth Amendment issue.  Because the court has already addressed the reasonableness of the search in connection with Defendants' Motion for Summary Judgment, the court will not separately consider this argument.

In U.S. v. Finley, 477 F.3d 250 (5th Cir. 2007), a defendant claimed a privacy interest in a cell phone issued to him by his employer.  Rejecting the government's argument that the employer, and not Finley, had a property interest in the phone, the court found that a property interest in the searched property was only one factor in the analysis.  Id.  The court concluded that the employee had a reasonable expectation of privacy in the phone because he had the right to exclude others from using the phone, took normal precautions to maintain his privacy in the phone and exhibited a subjective expectation of privacy in the phone. Finley, 477 F.3d at 259.

In the present case, Plaintiff Mendoza testified that she purchased the phone for A.M. and that A.M. was the only person who used the phone.[75]  Plaintiff Mendoza admitted that she first learned that the phone contained nude photos of her daughter and the young man in the meeting with Langner on November 11, 2009.[76]  This testimony was confirmed by A.M. who stated that Plaintiff Mendoza gave her the phone and never used it herself.[77]

The above facts establish that Plaintiff Mendoza had no personal information on the cell phone searched by Langner.  The fact that Plaintiff Mendoza paid for phone does not give rise to a

---

[75] DMSJ, Ex. E, Deposition of Jennifer Mendoza, p. 11.

[76] Id. at pp. 18-20.

[77] DMSJ, Ex. A, Deposition of A.M., p. 8.

51

privacy interest in its contents because the personal information stored in the phone was A.M.'s, not Plaintiff Mendoza's.  See Mancusi v. DeForte, 392 U.S. 364, 368 (1968)("[C]apacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.").

The court concludes that Plaintiff Mendoza does not have a protectable privacy interest in the contents of the cell phone.

### 2.  Exclusionary Rule in School Discipline

Finally, Plaintiffs seek a declaration that the fruits of the illegal search of A.M.'s phone cannot be used as a basis for discipline and in support cite Jones v. Laxtexo Ind. Sch. Dist., 499 F.Supp. 223 (E.D. Tex. 1980).  In Jones, all students and cars parked in the school parking lot were subjected to a dog trained to detect the odor of contraband.  Several students were suspended from school for three days when follow-up searches of their persons or vehicles revealed drugs and drug paraphernalia.  Jones, 499 F.Supp. at 227-29.  Pursuant to school policy, for each day suspended, a student was docked three points from course grades. Id. at 229.  As a result of the nine-point penalty, one student failed a required course and was unable to graduate.  Id.  The students filed the suit, alleging that the search violated their constitutional rights and sought a preliminary injunction.  Id.

In the context of a preliminary injunction hearing, the court found that the students had shown a substantial likelihood of success on the merits, that is, the generalized search violated their Fourth Amendment rights.  The court also found that under the circumstances in the case, barring school officials from using the unconstitutionally obtained evidence was an appropriate mechanism to enforce the strictures of the Fourth Amendment.  <u>Jones</u>, 499 F.Supp. at 237-39.  The court thus preliminarily enjoined school officials from reducing grades of the students as a result of their suspensions.  <u>Jones</u>, 499 F.Supp. at 240.  The court also enjoined school officials from denying one student the opportunity to make up the final exams that he had not taken and, if he passed the exams, from awarding to him a high school diploma.  <u>Jones</u>, 499 F.Supp. at 240-41.  Finally, the court enjoined the school district from further dog sniffs without some individualized suspicion directed at specific students.  <u>Jones</u>, 499 F.Supp. at 241.  Thus, the court applied the exclusionary rule to unwind the consequences of the likely illegal search.

Seventeen years later, in <u>Wren v. Towe</u>, 130 F.3d 1154 (5th Cir. 1997), the Fifth Circuit refused to apply the exclusionary rule in the context of a Section 1983 wrongful search action.  In <u>Wren</u>, a law enforcement officer initiated an investigation of a truck belonging to the Wrens that appeared to have been reconditioned by an illegal "chop shop" using stolen parts.  <u>Wren</u>, 130 F.3d at 1155-

56.   The truck was seized, and a judge determined that there was probable cause to believe that it was the product of a chop shop. Wren, 130 F.3d at 1157.   At a later time, it was determined that the truck was not a result of any illegal activity, and it was returned to Wren.   Id.   The Wrens sued, alleging that the investigating officers violated the Fourth Amendment by searching the truck without a warrant.   The officers denied this allegation and claimed that the Wrens gave them consent to search at the time; the Wrens denied doing so.   Id.

In the context of determining qualified immunity, the court assumed that the search was illegal and turned to whether the officers acted reasonably in seizing the truck.   Wren, 130 F.3d at 1158.   The Wrens argued that if the search was found to be in violation of the Fourth Amendment, evidence obtained in the search could be not considered in determining the reasonableness of the officers' actions.   Id.

Noting that the Supreme Court had never applied the exclusionary rule to civil cases, state or federal, the Fifth Circuit reasoned that the rationale behind the exclusionary rule was to protect Fourth Amendment rights through a deterrent effect on law enforcement, rather than to safeguard the personal constitutional right of the aggrieved party.   Wren, 130 F.3d at 1158 (citing United States v. Janis, 428 U.S. 433, 446-47 (1976)). Applying that Supreme Court precedent, the court found that the

facts did not warrant application of the exclusionary rule and held that the officers were entitled to qualified immunity. <u>Wren</u>, 130 F.3d at 1160.

Unlike the students in <u>Jones</u>, Plaintiffs do not seek to undo A.M.'s assignment to the DAEP. Rather, like the <u>Wren</u> plaintiffs, they seek monetary relief for the alleged violation of their Fourth Amendment rights. Even if the court did not consider itself bound to apply <u>Wren</u> to the present case, the context of the present search militates against application of the exclusionary rule. Teachers and school administrators are not law enforcement officers. Rather, they have a duty to safeguard all children in their custody. There is no compelling interest to be served by applying the exclusionary rule to the present situation. Plaintiffs' motion should be denied on this issue.

### IV.  Conclusion

In light of the foregoing, it is **RECOMMENDED** that Defendants' motion for summary judgment (Docket Entry No. 21) be **GRANTED IN PART, DENIED IN PART**. Specifically, it is **RECOMMENDED** that Crowe's and Klein ISD's motions for summary judgment be **GRANTED**, and that Langner's motion for summary judgment be **GRANTED** on the state law claims and **DENIED** on the federal claim. It is further **RECOMMENDED** that Plaintiffs' motion for summary judgment (Docket Entry No. 19) be **DENIED**.

The Clerk shall send copies of this Memorandum and

Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** this <u>15th</u> day of March, 2011, in Houston, Texas.

Nancy K. Johnson
United States Magistrate Judge